In the Matter of the Application of HARRY CHERRY, Petitioner, Respondent, for an Order of Certiorari, Pursuant to Article 78 of the Civil Practice Act, against THE BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Appellant.

Third Department, April 29, 1942.

*John J. Bennett, Jr., Attorney-General* [*Bernard Bienstock, Assistant Attorney-General,* of counsel], for the appellant.

*Samuel M. Shorenstein* [*Maurice Shorenstein* and *Lawrence J. Rittenband* of counsel], for the respondent.

*Albert L. Solodar,* for Allied Dental Council, Inc., as *amicus curiæ.*

HEFFERNAN, J. Petitioner was licensed to practice dentistry in this State on June 29, 1918, and has since practiced his profession in New York city.

In October, 1940, charges of unprofessional conduct were filed against him with the Department of Education of the State and with the State Board of Dental Examiners. In the charges it is asserted that petitioner is guilty of unprofessional conduct in violation of clause (h) of subdivision 2 of section 1311 of the Education Law in that between October, 1937, and August, 1939, he used an advertising solicitor to obtain patients and that as a result of such method he did obtain a number of patients.

After the charges were filed the State Board of Dental Examiners decided that a trial was necessary and appointed a subcommittee from its members for that purpose. A copy of the charges with notice of hearing was served on petitioner. After a hearing the subcommittee unanimously found petitioner guilty and recommended that he be censured and reprimanded. The Board of Dental Examiners reviewed the record and concurred in the recommendation. The Board of Regents, after a hearing on notice to petitioner, rejected the recommendation of the Board of Dental Examiners and voted to suspend petitioner's license to practice dentistry for a period of six months and directed the Commissioner of Education to issue an order accordingly.

Thereafter, pursuant to the provisions of subdivision 5 of section 1311 of the Education Law, petitioner applied for an order of certiorari to review the action of the Board of Regents in suspending him.

After a hearing the Albany Special Term of the Supreme Court annulled the order of the Commissioner of Education and the determination of the Board of Regents and from that decision the respondent has come to our court.

The facts in this case are similar to those involved in the companion case concerning Dr. Robert Rubenstein. (*Matter of Rubenstein* v. *Board of Regents*, 264 App. Div. 745.) Both cases were argued together. The issues of law in both are identical and a decision in one is determinative of the other.

The Education Law, in subdivision 2 of section 1311, provides for the suspension or revocation of a license to practice dentistry upon proof of any of the following acts: (a) immoral conduct, (b) gross inefficiency, (c) fraud in the practice of dentistry, (d, e) employment or abetment of an unlicensed person to practice dentistry, (f) conviction of a crime, (g) advertising for patronage by means of handbills, posters, circulars, stereopticon slides, motion pictures, radio or newspapers, and then concludes with subdivision (h) as follows: " That the dentist has been otherwise or in any other way guilty of unprofessional conduct."

The Board of Regents has adopted a number of rules relating ot the practice of dentistry. Among them is rule 5 which governs dental advertising and which reads:

" Dental Advertising. In the administration of the law, the following forms of advertising are considered unprofessional and objectionable: * * *

" 5. Employing or making use of advertising solicitors or free publicity press agents."

It cannot be doubted that the Board of Regents has power to exercise legislative functions in enacting canons of ethics to define further what constitutes proper or improper practices of dentistry. (Education Law, §§ 46, 51; *Matter of Dr. Bloom, Dentist, Inc.,* v. *Cruise,* 259 N. Y. 358.)

In support of the charges against petitioner it was shown that a man named Reuben Smith owned a large credit clothing store known as Stewart's Clothing Store, the store being incorporated as Stewart's Credit Corp. Smith also did business under the registered trade name of " Dental Credit Service " with offices adjoining those of petitioner. The two concerns, Stewart's Credit Corp. and Dental Credit Service, were one and the same. Smith and two of his employees in the clothing store solicited patients for petitioner and for other dentists from among the customers who came to the clothing store. Signs advertising public dental credit were located in various parts of the store. Clerks from the store physically escorted prospective patients to petitioner's office. When the patient arrived there he was examined, a price was named for the work suggested and all financial arrangements were completed by the Dental Credit Service which added three dollars as a uniform credit charge. The prospective patient was then required to

execute an assignment of wages as security for the bill. In many instances the patient was also required to have his account guaranteed. When the work was done all payments were made either to Dental Credit Service or to Stewart's Clothing Corp. and petitioner received seventy per cent of the proceeds, the affiliate retaining thirty per cent. Smith testified that he did a large business and that he had printed and circulated in Brooklyn 100,000 circulars. Dentists were supplied with these circulars and in three years it was shown that the Dental Credit Service did a business of $20,000. Petitioner admitted that as a result of these activities he had secured twenty-five patients whom he had never met before and who came to him solely as a result of the solicitation of the concerns operated by Smith. Testimony as to the methods of solicitation, financing and payment and the execution of wage assignments was given by many witnesses. The only character witness called by petitioner was Dr. Louis Lautman, chief of the department at the Jewish Hospital, and a dentist since 1907. Both on direct and cross-examination he testified that the activities of petitioner and the Stewart Clothing Corp. were unprofessional.

We have not reviewed the testimony in detail but from what has been shown it seems to us that the Board of Dental Examiners and the Board of Regents were justified in finding that petitioner was guilty of unprofessional conduct. The practices complained of were clearly of an objectionable and unprofessional nature. In the enactment of the statutes relating to the practice of dentistry the Legislature had a right to estimate the baleful effects of such practices and to put a stop to them. It was not dealing with shopkeepers and traders but with the members of a profession treating human ailments and demanding different standards of conduct from those which are traditional in the competition of the market place.

In arriving at its conclusion the Special Term relied entirely on *Brown* v. *University of State of New York* (242 App. Div. 85; affd., 266 N. Y. 598). We think the Special Term has misapprehended the effect of that decision. In our opinion the *Brown* case is not a controlling authority here. When that case was decided the statute authorized the revocation of a dentist's license for a number of reasons, among others, if he was " guilty of untrue, fraudulent, misleading or deceptive advertising." At that time rule 8 of the Rules of the Board of Regents Governing Dental Advertising prohibited the use of " handbills, * * * circulars, * * * motion pictures, radio, * * * or other advertising devices for the purpose of soliciting patronage." This court held, and the Court of Appeals concurred, that the rule was more restrictive

than the statute and that the basic law did not prohibit advertising which is not untrue, fraudulent, misleading or deceptive.

Following the decision in the *Brown* case, the Legislature amended clause (g) of subdivision 2 of section 1311 of the Education Law, and forbade advertising for patronage by means of " handbills, posters, circulars, stereopticon slides, motion pictures, radio or newspapers," regardless of whether such advertisements are " untrue, fraudulent, misleading or deceptive." Under the provisions of that amendment the determination of the Board of Dental Examiners and the Board of Regents should be sustained. In order to uphold their action it is unnecessary to have recourse to the rule; the basic statute furnishes ample authority.

Rule 5 cannot be said to be more restrictive than the statute which restricts advertising by various means. In view of the fact that the Legislature has declared it to be unlawful for a dentist to advertise by " handbills, posters, circulars, stereopticon slides, motion pictures, radio or newspapers," regardless of whether such advertisements are true or false, it seems to us that the Board of Regents may forbid the use of advertising solicitors by dentists. The mere fact that the Legislature has prohibited certain kinds of advertising does not deprive the Board of Regents of the authority to proscribe other forms which are objectionable, unprofessional and unethical. The prohibition against the use of outside solicitors surely is not more restrictive than the prohibition against advertising by the methods enumerated in the statute. Rule 5 merely serves to carry out the spirit and intent of the law and to facilitate its administration. The Rules adopted by the Regents governing advertising by dentists should be read in connection with the statute (Education Law, §§ 1300–1314) regulating the practice of dentistry. That statute was enacted to protect the public from imposters and charlatans who spurn the ethics of their profession and who prey upon the ignorant and the gullible. The practice of dentistry directly affects the public health and its members should not be permitted to obtain patients by means of alluring advertisements or by solicitation through paid agents. The solicitation of patients by dentists is harmful to any community because of the opportunity it gives them to discover ailments which are non-existent. It is the duty of the State not only to protect its citizens against incompetency, fraud and deception in the practice of dentistry but also to protect them against practices which are calculated to demoralize the profession. We know that at some time or other practically all our citizens are obliged to consult lawyers, doctors and dentists and few are able to judge of their qualifications in learning, skill and professional honor. It

is, therefore, of the utmost importance that the State should enact and enforce stringent regulations regarding the conduct of practitioners in the learned professions in order that they may not be forced into an unseemly and vulgar rivalry for clients and patients where the advantage will always be with the mots unscrupulous. If a lawyer attempted to obtain clients by the means adopted by petitioner he would render himself amenable to discipline under the provisions of the Judiciary Law. What would be regarded as unprofessional and unethical conduct on the part of a lawyer should likewise be regarded as unprofessional and unethical on the part of a physician or a dentist. All three professions should be required to maintain the same high standards. When we consider the fraud and imposition that would be encouraged by sanctioning the methods adopted by petitioner for the purpose of securing patients, the temptation to which it would subject the dentist and the danger to which it would expose the patient, we unhesitatingly reach the conclusion that the order of the Special Term should be reversed on the law and facts, with fifty dollars costs and disbursements, and the determination of the Board of Regents, together with the order of the Commissioner of Education, should be reinstated, with fifty dollars costs.

Hill, P. J., Crapser and Schenck, JJ., concur; Bliss, J., concurs on the following grounds: I concur for reversal upon the ground that the methods used by the petitioner through the Credit Agency to solicit business constituted unprofessional conduct on his part. This is especially true in the light of the amendments to section 1311 of the Education Law, adopted since the decision by the Court of Appeals in *Brown* v. *University of State of New York* (266 N. Y. 598). These amendments indicate an intention towards stricter regulation of the dental profession with relation to advertising and solicitation of business. Rule 5 of the Regents' Regulations governing dental advertising is a valid interpretation of the statutory prohibition against unprofessional conduct.

Order reversed on the law and facts, with fifty dollars costs and disbursements, and the determination of the Board of Regents, together with the order of the Commissioner of Education, reinstated, with fifty dollars costs.